**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THORNELL JOHNSON, | ) | |
| DECATUR BRANCH, | ) | |
| and CURTIS MONROE, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 25-cv-15421 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CHICAGO BOARD OF EDUCATION, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Thornell Johnson, Decatur Branch, and Curtis Monroe filed a *pro se* complaint against the Chicago Board of Education about sexual abuse at an elementary school in the 1980s. They brought the case in state court, but the Board removed it to federal court. The Board relied on the third amended complaint, which raised a federal claim for the first time.

As it turns out, the state court had struck the third amended complaint before the Board removed the case. So the Board removed the case based on a defunct, inoperative pleading. That complaint didn't create a ticket to ride to the federal courthouse.

Plaintiffs responded by filing a smattering of motions in federal court that tugged in different directions. Some of the motions suggest that they want to go back to state court. And some of the motions suggest that they feel right at home in federal court and want to stay put.

At first, Plaintiffs filed a motion to remand the case, pointing out that the third amended complaint wasn't in effect at the time of removal. But then, Plaintiffs filed two motions to amend the complaint to add a federal claim and thus create subject matter jurisdiction. And then, Plaintiffs filed more motions to remand. And then, Plaintiffs moved to start discovery and invoked the Federal Rules of Civil Procedure. The filings struck a should-I-stay-or-should-I-go-now chord.

Plaintiffs want to be here and there, but they can't be in two places at once. Courthouses are no exception. The long and the short of it is that the motions for leave to amend the complaint are granted. With the fourth amended complaint now on the books, subject matter jurisdiction is secure, so the motions to remand are denied.

## Background

Before diving in, the Court offers a forewarning. The procedural history of the case is a bit of a rat's nest. The path to the federal courthouse has zigged and zagged, and telling the story requires the reader to hitch a ride on a long and winding road.

The procedural history began on September 4, 2025, when Plaintiffs filed a complaint in state court. *See* 9/4/25 Cplt. (Dckt. No. 1-2) ("*Johnson I*"). They brought five state-law claims (not counting a sixth claim about equitable tolling) about sexual abuse by an elementary school teacher. The defendants included the Chicago Board of Education, the City of Chicago, Cook County, David Siers (the deceased teacher), and two state agencies.

The original complaint lacked complete diversity. Two of the Plaintiffs are citizens of Illinois. And they sued a collection of Illinois government entities.

Only a day later, Plaintiffs threw a curveball. They filed a second lawsuit, but this time, they filed a complaint in federal court. *See Johnson v. Board of Education*, 25-cv-10685 (N.D. Ill.) ("*Johnson II*"). The factual allegations largely repeated the allegations of the state-court complaint. Once again, they alleged sexual abuse by the same teacher at the same school during the same time. The federal complaint included five counts, including two federal claims under section 1983.

*Johnson II* is a different case than the one involving the opinion that you're currently reading. The case at hand is *Johnson I*, and it began in state court.

For present purposes, this Court will put the other federal lawsuit to the side (but it's on this Court's docket, too). Suffice it to say that Plaintiffs launched a case in state court (*Johnson I*), and the very next day, they launched a case in federal court (*Johnson II*).

The complaint in the state court case didn't stay on the books for long. A few weeks later, Plaintiffs filed an amended complaint. *See* 9/25/25 Am. Cplt. (Dckt. No. 1-3). Once again, they brought five claims under state law, but dropped the two state agencies as defendants.

A month passed, and Plaintiffs then filed a second amended complaint. *See* 10/31/25 Second Am. Cplt. (Dckt. No. 1-4). They dropped equitable tolling as a freestanding count, but they continued to bring five claims under state law against Illinois defendants.

Before long, Plaintiffs went back to the state courthouse and filed a third amended complaint. *See* 12/8/25 Third Am. Cplt. (Dckt. No. 1-1). That filing turned out to be more of a knuckleball than a curveball.

Right from the start, the third amended complaint caused confusion. Plaintiffs filed the third amended complaint in state court on December 8, 2025. But they used the wrong case caption. The top of the third amended complaint says "UNITED STATES DISTRICT COURT

2

NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION." *Id.* So Plaintiffs filed the third amended complaint in state court, but used the caption from the federal court case.

What's more, Plaintiffs included the case number from the federal lawsuit that they filed on September 5, 2025, meaning *Johnson II* (25-cv-10685). They included this judge's name in the case caption, too. *Id.* ("Judge: Seeger").

Maybe that filing was a misfire. Maybe Plaintiffs intended to file it in federal court, but launched it on the docket of the state case instead. Or maybe there is some other explanation.

Whatever the reason, the filing of the third amended complaint had jurisdictional significance (or so it seemed at the time). For the first time, Plaintiffs included a federal claim in the state-court lawsuit. The very first page invoked section 1983 and alleged that there was federal question jurisdiction under 28 U.S.C. § 1331.

The third amended complaint included two federal claims, plus a few state-law claims. The first claim was a deliberate indifference claim under the Fourteenth Amendment, alleging a state-created danger. The second claim was a *Monell* claim. Plaintiffs sued the Board of Education and John Doe defendants, but dropped the other defendants.

The third amended complaint didn't last long. On December 11, 2025, only a few days after the filing, the state court judge struck the third amended complaint. *See* 12/11/25 Order (Dckt. No. 13, at 5 of 24) ("The Third Amended Complaint filed by Plaintiff Johnson is hereby stricken as it was filed without leave of Court.").

Striking the third amended complaint restored the second amended complaint as the operative complaint. The third amended complaint offered a temporary foothold for federal jurisdiction (and thus removal). But when the state court struck it, that foothold broke apart and fell away.

No matter, the Chicago Board of Education seized the (expired) opportunity to get into the federal courthouse. On December 19, 2025, over a week after the state court struck the third amended complaint, the Board removed the case to federal court. *See* Notice of Removal (Dckt. No. 1).

The Board removed the case to federal court based on the existence of a federal claim in the third amended complaint. *Id.* at ¶ 2 ("In their Third Amended Complaint, Plaintiffs pled three claims (including two claims under federal law). . . . Because of Plaintiffs' allegations in their Third Amended Complaint, federal question jurisdiction exists under 28 U.S.C. § 1331."). The notice of removal didn't mention the fact that the state court had struck the third amended complaint a week earlier.

As an aside, it's a bit of a headscratcher to understand why the Board of Education removed the case based on an inoperative complaint. But the order from the state court offers a possible clue. According to the order itself, the Assistant State's Attorney drafted the order

striking the third amended complaint. *See* 12/11/25 Order (Dckt. No. 13, at 5 of 24) ("Prepared by: Silvia Mercado Masters Assistant State's Attorney"). The Assistant State's Attorney presumably represented Cook County, but not the Board of Education. So, maybe the attorney for Cook County successfully challenged the filing of the third amended complaint, and counsel for the Board hadn't gotten wind of the ruling before removing the case.

In any event, the important thing is that the supposed basis for removal went away. The third amended complaint fell by the wayside not long after it appeared on the scene. Without it, there was no jurisdictional hook to get into the federal courthouse. But the Board removed the case anyway.

That's a lot to digest, but it was only the opening salvo. At that point in the story, procedural fireworks started going off, and the parties put on quite a pyrotechnic display. Motions started flying here and there and bursting on the scene from right and left.

It didn't take long for the show to start. On December 19, 2025, on the same day as the filing of the notice of removal, Plaintiffs filed a motion to remand the case to state court. *See* 12/19/25 Mtn. (Dckt. No. 5). To their credit, Plaintiffs (again, who are *pro se*) argued that the third amended complaint was a nullity because it was stricken. *Id.* at 1 ("Because the Cook County state court struck Plaintiffs' December 8, 2025 Third Amended Complaint as a nullity (Dec. 11, 2025), the December 19, 2025 Notice of Removal cannot lawfully rely on that stricken filing to create federal jurisdiction; the case must be remanded.").

The motion to remand expressly pointed to the removal statute, too. "[A] stricken, unauthorized amendment cannot create removability under § 1446(b)." *Id.* at 2.

Plaintiffs asked this Court to send the case back to state court. *Id.* at 4. But then Plaintiffs threw a screwball. Plaintiffs seemingly made themselves at home in federal court, and started filing motions suggesting that they wanted to stay put.

A few days after filing the motion to remand, Plaintiffs filed a motion for leave to file a "third amended complaint." *See* 12/24/25 Mtn. (Dckt. No. 10). Out of the gate, that filing created more confusion. After all, the third amended complaint already existed – the state court had struck it a few weeks earlier on December 11. So, in reality, Plaintiffs asked for leave to file a fourth amended complaint (and that's what this Court will call it), but they called the pleading the "third amended complaint."

The draft of the fourth amended complaint included a few minor changes to the third amended complaint, as revealed by the redline. Plaintiffs dropped David Siers (the teacher) as a defendant, and made a few other corrections and additions.

But it included some big changes, too. Most importantly, the proposed fourth amended complaint invoked federal question jurisdiction and added a federal claim under section 1983.

*See* Fourth Am. Cplt., at ¶ 2 (Dckt. No. 10, at 7 of 39). The proposed pleading included a *Monell* claim against the Board of Education, the City of Chicago, and Cook County. *Id.* at ¶¶ 41–45.

The citation to federal law was no accident. The jurisdictional section of the proposed pleading invoked federal question jurisdiction, and supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367. *Id.* at ¶¶ 5–6. The pleading cited the Federal Rules of Civil Procedure, too. *Id.* at ¶¶ 14, 16.

Adding yet another wrinkle, the motion for leave to file the amended complaint referred to the "already disclosed . . . [and] existing § 1983" claim, even though no such claim existed. *See* 12/24/25 Mtn., at ¶ 5 (Dckt. No. 10). At that time, the second amended complaint continued to be the operative complaint, and that pleading doesn't have a federal claim.

Less than a week later, Plaintiffs launched the same motion a second time. On December 30, 2025, Plaintiffs refiled the motion for leave to file the fourth amended complaint, even though they filed an identical motion on Christmas Eve. *See* 12/24/25 Mtn. (Dckt. No. 10); 12/30/25 Mtn. (Dckt. No. 12).

All the while, Plaintiffs apparently pined to return to state court. Less than a week after filing a motion to amend the complaint and add a federal claim, Plaintiffs filed yet another motion. Once again, Plaintiffs moved to remand the case to state court. *See* 12/30/25 Mtn. (Dckt. No. 13).

At that point, more motions rained down. Plaintiffs filed more motions about remanding the case to state court. *See* 1/7/26 Mtn. (Dckt. No. 16); 1/27/26 Mtn. (Dckt. No. 22); 5/2/26 Mtn. (Dckt. No. 35). They also moved to take the early deposition of a fact witness under Rule 30 of the Federal Rules of Civil Procedure. *See* 3/24/26 Mtn. (Dckt. No. 29); 4/9/26 Mtn. (Dckt. No. 34); 5/11/26 Mtn. (Dckt. No. 40).

The docket overfloweth. To get to the bottom of it all, this Court ordered supplemental briefing, and presided over a hearing.

Taking a step back, this Court has a sneaking suspicion that maybe, just maybe, AI is lurking behind the filings and in the shadows. On the plus side, the filings by the *pro se* Plaintiffs are remarkably fast and eerily on point.

For example, on December 19, 2025, Plaintiffs filed a motion to remand only a few hours after the Board removed the case, and made a number of on-target points. As a second example, in mid-January, this Court issued a minute order inviting the Board to respond to Plaintiffs' pending motions. *See* 1/15/26 Order (Dckt. No. 19). That order hit the docket at 10:30 a.m. Only a few hours later, at 4:27 p.m. that same day, Plaintiffs filed a three-page brief citing several on-point Supreme Court cases (*Grupo Dataflux*, *Rockwell*, and *Caterpillar*) and relevant Seventh Circuit and Illinois appellate cases. *See* Pls.' Brf. (Dckt. No. 20).

5

On the other side of the ledger, Plaintiffs have fabricated multiple citations in their filings. For starters, "Plaintiffs [sought] leave to file the [Fourth] Amended Complaint to . . . correct an erroneous citation in the Second Amended Complaint: a reference to Doe v. Chicago Bd. Of Educ., 2020 IL App (1st) 190250, *which does not exist*." *See* 12/30/25 Mtn., at 1 (Dckt. No. 12) (emphasis added). They also cited "Doe v. Dimovski, 226 Ill. App. 3d 107 (2002), aff'd in part by Illinois Supreme Court precedents like Burke v. 12 Rothschild's Liquor Mart, Inc., 148 Ill. 2d 429, 448 (1992)" in their first complaint in state court. *See* 9/4/25 Cplt., at ¶ 25 (Dckt. No. 1-2). *Doe v. Dimovski* doesn't exist.

What's more, the filings give the impression that a computer is driving the train, and not in a good way. Plaintiffs keep launching motions in rapid-fire succession that seek inconsistent relief. They want to stay in federal court, and go back to state court.

All of this is a long way of saying the following. The Board removed the case to federal court based on an inoperative complaint. Since then, Plaintiffs have filed motions that send conflicting signals. Some of the motions seek a remand to state court, and some of the motions suggest that they want to stay in federal court. Most importantly, Plaintiffs have filed motions for leave to file a fourth amended complaint and add a federal claim.

### Analysis

The case presents a few basic questions. The first question is whether the Board had a legitimate basis to remove the case to federal court. The second question is whether the case can stay here now, if the Court lacked subject matter jurisdiction at the time of removal.

### I. The Lack of Subject Matter Jurisdiction

The starting point, as always, is subject matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U. S. 375, 377 (1994). Possible footholds for federal jurisdiction include the existence of a federal claim, *see* 28 U.S.C. § 1331, or a dispute between citizens of different states with a sufficient amount in controversy, *see* 28 U.S.C. § 1332(a), among other options.

Courts assess the existence of subject matter jurisdiction at the moment when the complaint walks in the door and enters the federal courthouse. "It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.' This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." *See Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 570–71 (2004) (citation and footnote omitted).

Plenty of cases begin with the filing of a complaint in the federal courthouse. In those cases, the time of the filing of the complaint is what matters. *Id.* Other cases begin in state court, and get removed to federal court. For those cases, the moment of removal to federal court is what counts. *See* 16 MOORE'S FEDERAL PRACTICE § 107.21 (3d ed. 2025) ("Federal

jurisdiction is determined based on the claims in the state court complaint as they existed at the time of removal.").

In reality, both rules stand for the same proposition. The relevant time for subject matter jurisdiction is the moment when the complaint hits the docket in the federal courthouse.

It isn't difficult to conclude that this Court lacked subject matter jurisdiction when the case at hand first arrived in the building. The Board removed the case from state court based on the third amended complaint. But that pleading was a nullity at the time of removal, because the state court had struck it a week earlier.

A stricken pleading can't give rise to subject matter jurisdiction because it isn't a pleading at all. From a jurisdictional standpoint, a stricken pleading is a nothing-burger. So, once the state court struck it, the third amended complaint was simply a piece of paper.

Removability depends on the operative complaint as it existed at the moment of removal. Here, the operative complaint at the time of removal was the second amended complaint, because the state court had struck the third amended complaint. And the second amended complaint could not support subject matter jurisdiction. It raised state-law claims against non-diverse parties, and it didn't include any federal claims.

So this Court lacked subject matter jurisdiction when the case first arrived.

## II.     The Jurisdictional Cure

The lack of subject matter jurisdiction at the time of removal is not the end of the road.

Again, the existence of jurisdiction typically depends on the state of affairs when a complaint arrives in the courthouse. A district court cannot enter judgment if it "lacked jurisdiction over the case when it was filed in or removed to federal court." *See Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. 421, 428 (2026).

But the Supreme Court has carved an "exception to the general rule." *Id.* A jurisdictional defect is potentially curable. "If a district court 'cures' a jurisdictional defect prior to final judgment, then the court of appeals is not required to vacate that judgment even if, at some earlier point in the case, the district court lacked jurisdiction." *Id.*; *see also Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699 (1972).

Amending a complaint can create or destroy subject matter jurisdiction. "[C]ourts conceive of amendments to pleadings as potentially jurisdiction-changing events. The amended complaint becomes the operative one; and in taking the place of what has come before, it can either create or destroy jurisdiction." *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025).

From a jurisdictional standpoint, amending a complaint can provide a foothold for subject matter jurisdiction, or it can pull the rug out. An amended complaint supersedes the old one. *Id.*

7

Once an amended complaint hits the docket, courts must reassess their jurisdictional footing and confirm if they stand on *terra firma*.

"So changes in parties, or changes in claims, effectively remake the suit. And that includes its jurisdictional basis: The reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction." *Id.* at 35–36.

A district court can gain or lose subject matter jurisdiction as a case rolls along, based on amendments to a complaint. It's not a one-way street. It's a two-way ratchet. Sometimes an amended complaint can giveth jurisdiction, and sometimes an amended complaint can taketh jurisdiction away.

"If, as *Rockwell* spelled out, eliminating federal claims in such a suit can destroy federal jurisdiction, the opposite is also true: Adding federal claims can create federal jurisdiction where it once was wanting. . . . And so too, an amendment can either destroy or create jurisdiction in an original diversity case." *Id.* at 37. "In short, the rule in original cases that jurisdiction follows the amended (*i.e.,* now operative) pleading applies across the board." *Id.*

That rule equally applies to removed cases. "The appropriateness of federal jurisdiction – or the lack thereof – does not depend on whether the plaintiff first filed suit in federal or state court. Rather, it depends, in either event, on the substance of the suit – the legal basis of the claims (federal or state?) and the citizenship of the parties (diverse or not?)." *Id.* at 38–39.

At bottom, the rule is simple. "When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Id.* at 30. "[F]ederal jurisdiction – or its absence – follows from the amended complaint." *Id.* at 38; *see also Caterpillar v. Lewis*, 519 U.S. 61, 64 (1996) ("We hold that a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered.").

"[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007). That rule "operates in federal-question cases and diversity cases, both to destroy and to create jurisdiction. And it cannot give way, in a case like this one, just because the case was removed from state to federal court." *Royal Canin*, 604 U.S. at 43.

At first blush, and at second glance, that conclusion might seem to be in tension with the time-of-filing rule. But it isn't.

The time-of-filing rule is best understood as a framework for evaluating whatever complaint is then operative. The time of filing is the moment to measure whether jurisdiction exists or doesn't exist under the pleading that governs. The jurisdictional snapshot takes place

when the federal complaint walks in the door of the federal courthouse. Jurisdiction does not go away even if the underlying boots-on-the-ground jurisdictional facts change later.

So, for example, if the parties are diverse at the time of filing, then there is diversity jurisdiction. It wouldn't matter if the defendant moved next door to the plaintiff the day after the complaint was filed. Jurisdiction was locked in on the day of filing, and new facts wouldn't change that reality. *See Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 574 (2004) ("To our knowledge, the Court has never approved a deviation from the rule articulated by Chief Justice Marshall in 1829 that '[w]here there is *no* change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit.'") (emphasis in original) (quoting *Conolly v. Taylor*, 2 Pet. 556, 565, 7 L.Ed. 518 (1829)); 15A MOORE'S FEDERAL PRACTICE § 102.16[1] (3d ed. 2025) ("Diversity is generally determined on the basis of the citizenship of the parties at the time suit is filed.").

The same is true of the amount in controversy. If the dispute is about $100,000 on day one, then the case satisfies the amount-in-controversy requirement. It wouldn't matter if the amount in controversy later fell to $50,000, meaning below the amount-in-controversy threshold of $75,000.01. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."); 15A MOORE'S FEDERAL PRACTICE § 102.104[1] (3d ed. 2025) ("As with the determination of citizenship, the relevant time for establishing the amount in controversy is at the commencement of the action.").

But the time-of-filing rule doesn't mean that the time of filing the *original* complaint somehow governs *amended* complaints. If a plaintiff files an amended complaint, and changes the parties or the claims, then the jurisdictional landscape can change. The time-of-filing rule on an original complaint doesn't govern jurisdiction if a plaintiff later files an amended complaint. From a jurisdictional perspective, the filing of an amended complaint is a brand new day.

When a plaintiff files an amended complaint, the time-of-filing rule does apply. But the relevant time is the time of filing the *amended* complaint, not the original complaint.

Putting it all together, the addition or subtraction of claims, or the addition or subtraction of parties, can affect a district court's subject matter jurisdiction. Adding a claim, or dropping a claim, or adding a party, or dropping a party can create or destroy subject matter jurisdiction.

But jurisdictional facts are different. The time-of-filing rule is about jurisdictional facts. If a party's citizenship changes, or if the amount in controversy changes, then the change does not affect a court's subject matter jurisdiction. Subject matter jurisdiction is locked-in at the time when the complaint arrives in federal court. That's because the facts might change, but the complaint doesn't (because the claims and the parties remain the same).

The Supreme Court in *Grupo Dataflux* used the lingo of the "party lineup," and that's a helpful way to understand the point. *See Grupo Dataflux*, 541 U.S. at 580. If there is a change

9

in the lineup of the claims or the parties, then a district court might gain or lose subject matter jurisdiction. But if the lineup stays the same, then the existence of subject matter jurisdiction depends on the state of the world as of the time of filing, even if some of the jurisdictional facts later change.

To sum up, amending a complaint can vest a district court with jurisdiction, or divest a district court of jurisdiction. That's true in federal question cases, and in diversity cases. And that's true in cases originally filed in federal court, and in cases removed from state court.

Those principles open the door to plugging the jurisdictional hole in the case at hand. Plaintiffs moved for leave to file a fourth amended complaint to add a federal claim. Rule 15(a)(2) provides that district courts "should freely give leave" to amend a complaint "when justice so requires."[1] *See* Fed. R. Civ. 15(a)(2).

The Seventh Circuit has outlined several factors that district courts should consider when faced with a motion for leave to amend. *See Chicago Joe's Tea Room, LLC v. Village of Broadview*, 94 F.4th 588, 607 (7th Cir. 2024) ("[L]eave may be denied on account of undue delay, prejudice, bad faith or dilatory motives, futility, or judicial economy.").

None of the usual suspects stand in the way of an amendment here. The case is in the early stages. Plaintiffs didn't delay in requesting leave to amend. They sought leave to amend less than a week after the case arrived in the federal courthouse.

The Board wouldn't suffer any prejudice, either. In fact, the Board does not object to the motion for leave to amend. *See* Resp., at 1 (Dckt. No. 21). The consent of the defendant is an independent basis for allowing an amendment to a complaint. *See* Fed. R. Civ. P. 15(a)(1)(B).

As an aside, a few district courts have concluded that a court can't allow an amended complaint if the court lacks subject matter jurisdiction. The idea seems to be that a court without jurisdiction has no power to do anything, including any power to allow an amended complaint.

---

[1] As an aside, Rule 15(a)(1) entitles a party to file an amended complaint "once as a matter of course," as long as it is timely. *See* Fed. R. Civ. P. 15(a)(1). It is true that the fourth amended complaint is the first attempt by Plaintiffs to amend their complaint post-removal, meaning after the case arrived in the federal courthouse. But that makes no difference. A federal court must treat a removed case "as if it originally had been brought in the federal court." *See* 14 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3738 (4th ed. 2026). A removed case comes with all of its baggage, and brings the full history with it. *See Murray v. Ford Motor Co.*, 770 F.2d 461, 464 (5th Cir. 1985) ("[W]hen a case is removed the federal court takes it as though everything done in the state court had in fact been done in the federal court.") (citations omitted); *Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 795 (9th Cir. 1996) ("The longstanding principle is that after removal, the federal court takes the case up where the State court left it off.") (cleaned up). Earlier amendments to a complaint count under Rule 15(a)(1), even if the amendments took place in state court. *See, e.g.*, *Limas v. AutoZone, Inc.*, 2025 WL 895834, at *2 (S.D. Tex. 2025); *see also Mia Aesthetics Clinic, LLC v. Willis*, 2022 WL 22854358, at *2 (S.D. Fla. 2022).

10

*See, e.g.*, *McCallie v. Collins*, 2020 WL 130744, at *3 (W.D. Ky. 2020) ("[A]t the time of removal, the Court lacked subject-matter jurisdiction when the complaint was first filed. The Court cannot thus consider the motion to amend."); *Cliffs Natural Resources Inc. v. Seneca Coal Resources, LLC*, 2018 WL 2012900, at *1 (D. Del. 2018) ("Because jurisdiction is the foundation for all judicial power, I conclude that I lack the authority to consider Plaintiffs' Motion to Amend, and therefore this action must be dismissed."); *Sharp v. Town of Kitty Hawk*, 2011 WL 3269416, at *3 (E.D.N.C. 2011) ("As such, the court lacks subject matter jurisdiction in the first instance and cannot grant plaintiff leave to amend the complaint to state a federal claim."); *see also* 3 MOORE'S FEDERAL PRACTICE § 15.14 (3d ed. 2025) ("Essentially, a plaintiff may correct the complaint to show that jurisdiction does in fact exist; however, if there is no federal jurisdiction, it *may not be created by amendment*.") (emphasis added); *but see GenoSource, LLC v. Inguran, LLC*, 386 F. Supp. 3d 984, 990 (N.D. Iowa 2019) ("[A] court may properly consider the merits of a Rule 15(a)(2) motion to amend, even in the absence of jurisdictional certainty.").

That approach is more than a little hard to square with *Royal Canin* and its judicial ancestry. *Royal Canin* confirmed that an amended complaint can "create" jurisdiction. *See Royal Canin*, 604 U.S. at 35 ("The amended complaint becomes the operative one; and in taking the place of what has come before, it can either create or destroy jurisdiction."). That conclusion presupposes the ability of a district court to allow an amended complaint when there is no jurisdiction. Otherwise, the situation wouldn't come up.

True, Rule 15(a) includes two paths for amending a complaint. One path is an amendment as of right, and the other path is an amendment with leave of court. *See* Fed. R. Civ. P. 15(a)(1); Fed. R. Civ. P. 15(a)(2). Some courts have latched on to the difference. *See Connectu LLC v. Zuckerberg*, 522 F.3d 82, 95–96 (1st Cir. 2008). But it's hard to see any principled reason why a plaintiff could amend a complaint as of right, but a plaintiff couldn't amend a complaint with leave of court. It would be strange if a plaintiff could be entitled to do something (under Rule 15(a)(1)) that the district court is powerless to allow (under Rule 15(a)(2)).

Nothing in the Federal Rules suggests that a district court cannot allow an amendment to fix a lack of jurisdiction. Rule 15 broadly allows amendments "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). Nothing in the text suggests that jurisdiction-creating amendments are off limits. "Justice" doesn't forbid jurisdiction-creating amendments.[2]

---

[2] Elsewhere, the Federal Rules give courts tools to fix jurisdictional problems. Rule 21 allows lower courts to drop nondiverse, dispensable parties to correct a lack of subject matter jurisdiction. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("It is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after

A lack of jurisdiction ties a court's hands when it comes to the merits of the case. But a district court can allow an amended complaint to untie its hands. Put another way, a district court has the power to unlock the doors to the courthouse.

Ironically enough, maybe the strongest argument against the motion for leave to amend comes from Plaintiffs themselves, albeit not expressly. Plaintiffs have filed several motions to remand the case to state court. The motions create docket dissonance. The motions for leave to amend suggest that Plaintiffs want to stay, and the motions to remand suggest that Plaintiffs want to go.

The case can't be in two courthouses at once. Plaintiffs have to pick their poison, and their forum.

This Court is faced with two options. On the one hand, this Court could grant the motions for leave to amend, deny the motions to remand, and keep the case in federal court. On the other hand, this Court could deny the motions for leave to amend, grant the motions to remand, and send the parties packing to state court.

It's hard to say which set of motions should take precedence. Plaintiffs filed a motion to remand, and then filed a motion for leave to amend the complaint less than a week later. More motions soon followed. All told, they have filed multiple motions to remand and multiple motions for leave to amend.

A later-filed complaint supersedes an earlier complaint. This Court will apply a comparable rule of construction. Plaintiffs moved to remand, and then filed a motion for leave to amend. This Court will treat the later-filed motion to amend as superseding the earlier motion to remand. But candidly, that's a hard call, because Plaintiffs keep ping-ponging back and forth.

In effect, Plaintiff plugged their own jurisdictional hole. They pointed out the lack of subject matter jurisdiction, and then fixed it by asking for leave to add a federal claim. So the Court will treat the filing of the motion for leave to amend as a waiver of the prior argument about the motion to remand.

Keeping the case in federal court is consistent with the existence of *Johnson II*, meaning the other case currently in the federal courthouse. Plaintiffs displayed their desire to be in federal court by filing that separate case in the federal courthouse. It's hard to see why Plaintiffs should have one case in state court, and another in federal court, about the same thing at the same time.

Without further ado, Plaintiffs' motion for leave to file a fourth amended complaint is hereby granted. From this moment forward, the operative complaint is the fourth amended

---

judgment has been rendered."). *Newman-Green* holds that Rule 21 allows courts to create jurisdiction by dismissing a party, even though the court lacked jurisdiction before the dismissal.

complaint. That pleading includes a claim under federal law. So this Court now has subject matter jurisdiction, even though it didn't until now.

### III. Statutory Objections to Removal

There is another wrinkle. Subject matter jurisdiction is one thing. The statutory requirements for removal are another.

Establishing subject matter jurisdiction isn't enough to remove a case to federal court. A defendant must satisfy the statutory requirements for removal, too. The right to remove a lawsuit from state court to federal court "is entirely a creature of statute[,] and 'a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress.'" *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002).

The removal statute imposes several requirements to remove a case to federal court, and the existence of subject matter jurisdiction is one of them. *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants.").

The existence of subject matter jurisdiction is a *statutory* requirement under the removal statute, in addition to a constitutional requirement. *See Caterpillar v. Lewis*, 519 U.S. 61, 73 (1996) ("The *jurisdictional* defect was cured, *i.e.,* complete diversity was established before the trial commenced. Therefore, the Sixth Circuit erred in resting its decision on the absence of subject-matter jurisdiction. But a statutory flaw – Caterpillar's failure to meet the § 1441(a) requirement that the case be fit for federal adjudication at the time the removal petition is filed – remained in the unerasable history of the case.") (emphasis in original).

So, in effect, subject matter jurisdiction performs double duty. As a constitutional matter, a district court can't keep a case if it lacks subject matter jurisdiction. And as a statutory matter, a defendant can't remove a case if the district court lacked subject matter jurisdiction at the time of removal.

That's potentially a problem here. After all, Plaintiffs objected to removal almost immediately, by filing a motion to remand on the very same day that the Board removed the case to federal court. Plaintiffs expressly cited the removal statute, and pointed out that this Court lacked subject matter jurisdiction.

Parties can waive objections to removal by making themselves at home in federal court. Filing an amended complaint with a federal claim after removal is a waiver of an objection to removal. *See Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 185 (7th Cir. 1984) (Posner, J.) ("If he was convinced that the original action was not removable he could have stuck by his guns and we would have vindicated his position on appeal. But once he decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there. Otherwise he would be in a position where if he won his case on the merits in

13

federal court he could claim to have raised the federal question in his amended complaint voluntarily, and if he lost he could claim to have raised it involuntarily and to be entitled to start over in state court."); 16 MOORE'S FEDERAL PRACTICE § 107.151[2][g] (3d ed. 2025) ("A plaintiff may not voluntarily invoke and then disavow by way of remand motion federal jurisdiction following removal. . . . [W]hen a plaintiff voluntarily amends the complaint in federal court, the plaintiff ordinarily waives the right to seek remand.").

And that's what Plaintiffs have done here. They have filed several motions for leave to amend the complaint. Plus, they have filed several motions to kick-start discovery, invoking the Federal Rules. That's inconsistent with a desire to leave the federal courthouse.[3]

If anything, the case at hand involves a stronger argument for waiver than the situation in *Bernstein*. In that case, the plaintiff objected to removal over and over again, and amended the complaint only after the district court issued an adverse ruling and denied the motion for remand. But here, Plaintiffs repeatedly sought to amend the complaint before this Court had resolved the motions to remand.

Parties can't waive the need for subject matter jurisdiction. But parties can waive the *statutory* requirement that subject matter jurisdiction must exist *at the time of removal*.

Plaintiffs objected to removal under the removal statute, citing the lack of subject matter jurisdiction. Plaintiffs could have stuck to their guns. Instead, they took up shop in the federal courthouse, filing motion after motion. They laid down roots in the federal courthouse, and acted like they wanted to stay where they were transplanted. The motions communicated a desire to stay in the federal courthouse, so they waived the argument about the desire to return to the state courthouse.

There is one final loose end. Plaintiffs also moved to remand based on the notion that not all defendants consented to removal. *See* 1/27/26 Mtn. (Dckt. No. 22). But Plaintiffs didn't make that argument in their original motion to remand. *See* 12/19/26 Mtn. (Dckt. No. 5); *see also* 28 U.S.C. § 1446(b)(2)(A). That argument first appeared in their amended motion to remand (on January 27, 2026), which they filed more than 30 days after removal (on December 19, 2025). So the argument is waived. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case

---

[3] Other prudential considerations might come into play in cases that don't involve a waiver. *See, e.g.*, *Caterpillar*, 519 U.S. at 75 (discussing "considerations of finality, efficiency, and economy"). That passage in *Caterpillar* addressed the statutory requirement for subject matter jurisdiction. *See Hain Celestial Group*, 607 U.S. at 431 ("Those considerations, however, were relevant only to excusing noncompliance with the removal statute's requirement 'that there be complete diversity at the time of removal' after a jurisdictional defect had been properly and finally cured.") (citation omitted). Here, those factors would lean in favor of remand. But this Court does not need to address those factors, because Plaintiffs waived the objection to removal by filing an amended complaint.

on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

To tie a ribbon on it, Plaintiffs waived their statutory objections to removal by invoking this Court's jurisdiction. They acted like they want to stay, so they're going to stay put.

*   *   *

At long last, this Court has reached the end of the road on this jurisdictional journey. The Board lacked a basis to remove the case to federal court, but did so anyway. This Court lacked subject matter jurisdiction on the day of removal. But Plaintiffs have now cured the jurisdictional defect by filing a fourth amended complaint.

The case may not have belonged in the federal courthouse on day one. But from a jurisdictional standpoint, all's well that ends well.

### Conclusion

For the foregoing reasons, Plaintiffs' motions to remand (Dckt. Nos. 5, 13, 22) are hereby denied. Plaintiffs' motions for leave to file a fourth amended complaint (Dckt. Nos. 10, 12) are granted. Plaintiffs' motions for a ruling (Dckt. Nos. 16, 34, 35) are denied as moot.

Plaintiffs attached a draft of the amended pleading as an exhibit to their first motion for leave to file an amended complaint. Putting the pleading on the docket as a stand-alone docket entry will make it easier to find. The Court grants Plaintiffs leave to file the fourth amended complaint as a freestanding docket entry within one week of the entry of this order.

Date: May 19, 2026

_____
Steven C. Seeger
United States District Judge

15